FIRST NATIONAL BANK OF COLLINS ET AL. *v*. WARREN.

[74 South. 124, Division B.]

1. EQUITY. *Judgment. Impeachment. Fraud in procurement.*
   Even a judgment may be impeached and set aside for fraud in its procurement.

2. SAME.
   Under the facts as set out in its opinion in this case the court held, that the bill of complaint to set aside a decree adjudging title to property in defendants, but requiring defendants to make monthly payments to plaintiff for her support in accordance with a previous agreement between the parties and directing defendants to give security for the making of such payment, sufficiently charged fraud requiring if true the setting aside of the decree, or the preservation of plaintiff's rights by requiring the giving of the security provided for, as to which the defendants had made default.

APPEAL from the chancery court of Covington county.

HON. D. M. RUSSELL, Chancellor.

Bill by J. L. Warren, guardian, against the First National Bank of Collins and others. From a judgment overruling a demurrer to the bill, defendants appeal.

The facts are fully stated in the opinion of the court.

*M. U. Mounger* and *G. H. Merrel,* for appellant.

ETHRIDGE J., delivered the opinion of the court.

Mrs. Hattie L. Cockran filed her bill in the chancery court of Covington county against Mrs. Hattie L. Bradshaw and others, setting forth that she had inherited three thousand and seven hundred dollars, and that, being an aged person, she made an arrangement with Hattie L. Bradshaw and J. W. Bradshaw by which they were to take three thousand six hundred and sixty-two dollars and invest it for her, and for the use of such money they should support and take care of her as long as the arrangement was mutually agreeable, that the Bradshaws invested some of the money in real estate described in the bill, taking the title in the name of Mrs. Hattie Bradshaw, and that the Bradshaws loaned H. A. Davis and P. M. Davis, cashier and assistant cashier of the First National Bank of Collins, a portion of the money, taking note in the name of Mrs. Hattie L. Bradshaw, and that in doing this they conspired with Davis and amongst themselves to deprive the complainant of her property fraudulently, and alleging that the Davises and the Bradshaws all had knowledge of her rights in the property and in the money, and that they had conspired and colluded together for the purpose of defrauding her out of her rights, and that after getting the land titles in Mrs. Bradshaw and the note in her name she was turned out of the Bradshaw home and they refused to support her, and alleged that in truth and in fact the property they purchased was in reality the property of the complainant, and praying for a decree to

have the same so adjudged by the chancery court. This bill was not answered, but before decree was taken the parties appeared in court and entered a consent decree by which it appears that upon the consideration that the defendant Hattie L. and J. W. Bradshaw was to pay thirty dollars per month for the support of Hattie L. Cockran during the balance of her natural life, and the said Bradshaws would pay all the costs, including an attorney's fee, etc., the title to the land and the one-thousand dollar note were to be declared and decreed to Mrs. Hattie L. Bradshaw. The court then decreed the property in accordance therewith with the following clause:

"And that the said J. W. Bradshaw and Hattie L. Bradshaw obligate and bind themselves to pay Mrs. Hattie L. Cockran the sum of thirty dollars per month or its equivalent for her support and maintenance during the balance of her natural life beginning on this date, and they execute such security to be approved by her for said purpose."

This decree was signed on the second day of September, 1913. Afterwards Mrs. Hattie L. Cockran, the original complainant, filed a bill in the chancery court reciting and charging that this decree was entered by consent on the understanding and agreement that they were to execute security on the said lands and property to Hattie L. Cockran for the purpose of securing her support of thirty dollars per month during her natural life, and the decree was not to become effective until such security was given satisfactory to herself, that J. W. Bradshaw went to the First National Bank for the purpose of executing the security, and that the Bradshaws and Davises and the bank through Davis entered into a conspiracy not to execute the security as required, but that the bank and Davis would furnish thirty dollars a month for a time to keep her satisfied, that she was then in bad health, and that the reason for consenting to the decree was that she believed that their purpose was, in good faith, to take care of her during her natural life, and that she was then in bad

health and without home, and that the parties, Bradshaw and wife, were her nephew and niece, and that, desiring a home with them where she could be cared for, and believing they intended in good faith to carry out the contract, she consented to the decree, but that it was known to all of the parties to the record that the decree was to besome effective only on giving the security. A *lis pendens* notice was filed in the original suit and is in the record. The defendant to the last bill demurred, and the court overruled the demurrer and granted an appeal to settle the principles of the case.

It is contended by the appellants that it is incompetent to impeach the agreement recited in the decree in the first suit, and that the appellant (who is the guardian of Mrs. Hattie L. Cockran, who since the filing of the suit has become *non compos mentis*) is confined to a suit *personam* against J. W. and Hattie L. Bradshaw. The bill alleges that the *status* is the same now as it was when the bill was filed. We think the chancellor was correct in overruling the demurrer, and that the recitals of the decree show that the security was to be given to the complainant and obligations to be executed, and that she had by reason of the decree, and the *lis pendens* notice, an equity chargeable against the property involved in the suit. The allegations are sufficient to charge fraud, and even a judgment may be impeached for fraud in its procurement. If the allegations of the bill are true, the chancery court would give appropriate relief setting aside the entire transaction if it found it was tainted with fraud from the beginning, or charging the property described in the bill, with thirty dollars per month, from the date of the decree originally rendered, during her natural life, with provision for the execution and sale of said property and a lien thereon to satisfy such judgment if it found the fraud arose after the original decree was entered. Of course, if the proof showed that there was no fraud, the chancellor could dismiss the bill. We think the bill charges adequately a

case entitling the complainant to relief if the allegation of the bill be true.

The case is therefore affirmed, and remanded for further proceedings in the court below.

*Affirmed and remanded.*